UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JESSICA JUDITH JOSIELEWSKI,

                     Plaintiff,        **1:15-cv-00728-MAT**

                                            **DECISION AND ORDER**

        -vs-

NANCY A. BERRYHILL, Acting Commissioner
of Social Security,

                     Defendant.

---

## I. INTRODUCTION

Represented by counsel, Jessica Judith Josielewski ("Plaintiff") has brought this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security[1] ("Defendant" or "the Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' competing motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

---

[1] Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security on January 23, 2017. The Clerk of the Court is instructed to amend the caption of this case pursuant to Federal Rule of Civil Procedure 25(d) to reflect the substitution of Acting Commissioner Berryhill as the defendant in this matter.

## II. PROCEDURAL BACKGROUND

In December 2011, Plaintiff protectively filed a Title II application for DIB and a Title XVI application for SSI, alleging disability beginning October 16, 2011, due to lower back pain, leg pain, and loss of mobility in her legs. Administrative Transcript ("T.") 214-37. Plaintiff's applications were initially denied and she timely requested a hearing, which was held before administrative law judge ("ALJ") Robert T. Harvey on October 3, 2013. T. 67-93, 170. On November 19, 2013, the ALJ issued an unfavorable decision. T. 50-66. Plaintiff's request for review was denied by the Appeals Council on March 18, 2015, making the ALJ's decision the final decision of the Commissioner. T. 4-7. Plaintiff then timely commenced this action.

## III. THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. *See* 20 C.F.R. § 404.1520(a). Initially, the ALJ found that Plaintiff met the insured status requirements of the Act through March 31, 2012. T. 55. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from October 16, 2011, the alleged onset date. *Id.*

At step two, the ALJ determined that Plaintiff had the severe impairment of scoliosis with Harrington rod placements and the non-severe impairments of obesity, anxiety, and depression. *Id.*

At step three, the ALJ considered Plaintiff's impairments and found that, singly or in combination, they did not meet or medically equal the severity of a listed impairment. T. 56. In particular, the ALJ considered listings under subsection 1.00, pertaining to musculoskeletal disorders. *Id.*

Prior to proceeding to step four, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a), with the following additional limitations: occasional limitations in bending, climbing, stooping, squatting, kneeling, balancing, and crawling; occasional limitations in pushing and pulling with the upper extremities; cannot work in areas where she would be exposed to cold. T. 56.

At step four, the ALJ determined that Plaintiff had no past relevant work. T. 59. At step five, the ALJ relied on a vocational expert's testimony to find that there are other jobs that exist in significant numbers in the national economy and state-wide that Plaintiff can perform, including order clerk, cable worker, and ampoule sealer. T. 59-60. The ALJ accordingly found that Plaintiff was not disabled as defined in the Act. T. 60.

**IV. DISCUSSION**

**A. Scope of Review**

When considering a claimant's challenge to the decision of the Commissioner denying benefits under the Act, a district court must accept the Commissioner's findings of fact, provided that such

findings are supported by "substantial evidence" in the record. *See* 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). Although the reviewing court must scrutinize the whole record and examine evidence that supports or detracts from both sides, *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted), "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

In this case, Plaintiff argues that remand is required because (1) the ALJ failed to consider the effects of Plaintiff's morbid obesity, (2) the ALJ erred in finding Plaintiff's depression and anxiety to be non-severe impairments, and (3) the ALJ's conclusion that Plaintiff is capable of sedentary work is not supported by substantial evidence. For the reasons set forth below, the Court finds these arguments without merit.

**B.  The ALJ Properly Considered Plaintiff's Obesity**

Plaintiff's first argument is that the ALJ failed to properly consider the impact of her morbid obesity on her ability to function. This argument is not supported by the record.

"Obesity is not in and of itself a disability," but "[a]n ALJ should consider whether obesity, in combination with other

impairments, prevents a claimant from working." *Guadalupe v. Barnhart*, No. 04 CV 7644 HB, 2005 WL 2033380, at *6 (S.D.N.Y. Aug. 24, 2005). "[T]here is no specific level of weight or BMI that equates with a 'severe' or 'not severe' impairment," *Gardenier v. Comm'r of Soc. Sec.*, No. 5:16-CV-0073 (WBC), 2017 WL 2389680, at *4 (N.D.N.Y. June 1, 2017) (internal quotation omitted), and, like other impairments, obesity is non-severe if "the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work." *Rowe v. Colvin*, No. 8:15-CV-00652 (TWD), 2016 WL 5477760, at *5 (N.D.N.Y. Sept. 29, 2016); *see also Farnham v. Astrue*, 832 F. Supp. 2d 243, 261 (W.D.N.Y. 2011) (ALJ did not err in failing to find plaintiff's obesity severe where "the record establishes that Plaintiff is obese . . . but is otherwise devoid of any evidence that Plaintiff's treating or examining sources considered Plaintiff's obesity a significant factor relative to Plaintiff's ability to perform basic work activities.").

In this case, the evidence of record supports the ALJ's conclusion that Plaintiff's obesity was a non-severe impairment. Plaintiff did not claim her obesity as a disability. To the contrary, when the ALJ expressly asked her if she had any functional limitations because of her body weight, she stated that she did not, and that she felt that she was "limited because of [her] back, not so much [her] weight." T. 73. Plaintiff also stated that, although her original orthopedic surgeon had told her

that it was not good for anyone to be overweight, no doctors had told her to try to lose weight because of her medical condition. *Id*. Additionally, and as the ALJ noted in his decision, the record establishing that Plaintiff was obese well before she alleged that she became disabled. *See* T. 57.

Moreover, and as the Commissioner correctly points out, any error by the ALJ in finding Plaintiff's obesity non-severe was harmless, because he found other impairments to be severe, continued with the sequential analysis, and considered Plaintiff's obesity in determining her RFC. *See Niles v. Astrue*, 32 F. Supp. 3d 273, 283 (N.D.N.Y. 2012) (finding harmless error where ALJ found obesity non-severe but "found other impairments to be severe and continued with the sequential analysis"). The ALJ expressly noted in his decision that Plaintiff had been obese from an early age (*see* T. 57). The ALJ also afforded significant weight to the August 2010 opinion of consultative examiner Dr. J.R. Cardiff, who expressly diagnosed Plaintiff with morbid obesity and assessed physical limitations taking into account that diagnosis. It is well-established that an ALJ may account for a claimant's obesity in an RFC finding "by relying on medical reports that . . . note[] [the claimant's] obesity and provide[] an overall assessment of her work-related limitations." *Drake v. Astrue*, 443 F. App'x 653, 657 (2d Cir. 2011); *see also Guadalupe*, 2005 WL 203380 at *6 ("When an ALJ's decision adopts the physical limitations suggested by reviewing doctors after examining the Plaintiff, the claimant's

obesity is understood to have been factored into the[] decision[].").

Plaintiff also argues that additional evidence submitted to the Appeals Council - specifically, evidence that Plaintiff had been advised to consider bariatric surgery and evidence that Plaintiff was diagnosed with sleep apnea in April 2014 - demonstrates that her obesity was associated with significant functional limitations. The Court disagrees.

"[N]ew evidence submitted to the Appeals Council following the ALJ's decision becomes part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision." *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). The Appeals Council is required to consider "new and material" evidence "if it relates to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. §§ 404.970(b); 416.1470(b). "This regulation was promulgated by the [Commissioner] to provide claimants a final opportunity to submit additional evidence before the [Commissioner]'s decision becomes final." *Perez*, 77 F.3d at 45. Evidence is "material" if it is "both relevant to the claimant's condition during the time period for which benefits were denied and probative[,]" and there is "a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently." *Lisa v. Sec'y of Dep't of Health and Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991) (quotation and citation omitted).

In this case, the evidence identified by Plaintiff does not constitute new and material evidence. First, Plaintiff submitted treatment notes from October 28, 2013 indicating that she "has considered but does not want to pursue any bariatric surgery at this point in time." T. 14. Contrary to Plaintiff's argument, these treatment notes do not state that bariatric surgery was recommended to Plaintiff, nor is there any indication in them that her physicians believe bariatric surgery is necessary. Indeed, the "care plan" section of these treatments notes makes no mention of weight loss at all, but instead recommends that Plaintiff undergo physical therapy. T. 16. It is also noteworthy that the physician who authored these treatment notes opined that Plaintiff's reported pain was out of proportion to her physical examination. *Id*. Taken as a whole, these treatment notes do not contain any information that could reasonably be expected to have resulted in a different determination by the Commissioner.

Second, Plaintiff submitted a polysomnography report from April 8, 2014 in which she was assessed with mild sleep apnea. T. 29-30. There is nothing in the polysomnography report to suggest that it relates back to the relevant time period, nor does it support the conclusion that Plaintiff was suffering from sleep apnea during the time when she was denied benefits. Plaintiff's argument relies instead on several speculative leaps of logic - namely, that her obesity may have contributed to her development of sleep apnea and that she may have been suffering from sleep apnea

during the relevant time period.  This speculation is insufficient to demonstrate a reasonable likelihood of a different outcome had this evidence been before the ALJ.

In sum, Plaintiff has not shown that the ALJ erred in finding her obesity a non-severe impairment, and, in any event, any such error was harmless.  The additional evidence Plaintiff submitted to the Appeals Council does not change this conclusion.

### C. The ALJ did not Err in Considering Plaintiff's Anxiety and Depression

Plaintiff next argues that the ALJ erred at step two in determining that Plaintiff's anxiety and depression were non-severe impairments.  Again, the Court disagrees.

Under the Commissioner's regulations, an impairment is severe only if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 404.1520. "Basic work-related mental abilities include understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervisors, coworkers, and usual work situations; and dealing with changes in a routine setting." *Miller v. Berryhill*, No. 6:16-CV-06467(MAT), 2017 WL 4173357, at *7 (W.D.N.Y. Sept. 20, 2017).  "A claimant has the burden of establishing that she has a severe impairment." *Id*. (internal quotation omitted).

In this case, the evidence of record amply supports the conclusion that Plaintiff's anxiety and depression are non-severe

impairments. As the ALJ noted, a mental status examination of Plaintiff in August 2012 revealed no significant findings. T. 58. During that mental status examination, Plaintiff demonstrated adequate attention, recent memory, reasoning, and social judgment, good remote memory and concentration, and good to fair math skills and immediate memory. T. 340. A consultative psychiatric examination performed on March 23, 2012 was similarly benign - Plaintiff was oriented in all spheres and demonstrated good attention, concentration, immediate memory, remote memory, and reasoning. T. 369. These uncontradicted medical assessments plainly support the ALJ's conclusion that Plaintiff's mental impairments would not have more than a minimal effect on her ability to perform basic work-related functions.

Moreover, and as with the ALJ's assessment of Plaintiff's obesity, any error by the ALJ in finding Plaintiff's mental impairments non-severe was harmless, because he continued the sequential analysis and expressly considered the medical evidence regarding Plaintiff's mental impairments in determining her RFC. *See* T. 57. Under these circumstances, the Court finds that Plaintiff has failed to show that remand is warranted on this basis.

**D. Substantial Evidence Supports the ALJ's RFC Finding**

Plaintiff's final argument is that the ALJ's finding that she is capable of performing sedentary work is unsupported by the medical evidence of record. In particular, Plaintiff contends that

there is no record evidence that she is able to sit for six hours in an eight hour workday, as is required to perform sedentary work. The Court finds this argument unavailing.

It is true that sedentary work generally requires the ability to sit for up to six hours in an eight hour workday. However, an individual need not be capable of sitting for six *continuous* hours in order to perform sedentary work. Indeed, "[n]ormal work breaks and meal periods split an eight hour workday into approximately two hour periods." *Swain v. Colvin*, No. 1:14-CV-00869 (MAT), 2017 WL 2472224, at *3 (W.D.N.Y. June 8, 2017); *see also Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004) (rejecting argument that "a sedentary worker must be able to sit for six unbroken hours without standing up or shifting position during a work day" and noting that "[t]he [Commisioner's] regulations do not mandate the presumption that all sedentary jobs in the United States require the worker to sit without moving for six hours, trapped like a seat-belted passenger in the center seat on a transcontinental flight").

In this case, a consultative examination of Plaintiff performed on April 5, 2012 resulted in a finding that she was capable of "short periods of sedentary activity with frequent position changes and very light physical activity." T. 374. Dr. Cardiff, who examined Plaintiff in August 2010 (prior to her alleged disability onset date), opined that Plaintiff was "unable to sit, but for brief periods." T. 343. As a threshold matter, it

is not clear that the ALJ's finding that Plaintiff was capable of performing sedentary work was inconsistent with these opinions. As discussed above, to be capable of performing sedentary work, an individual generally is required to work in two hour periods, and is not required to sit for six unbroken hours. As such, this Court has previously held that an assessment of moderate to marked limitations for prolonged sitting is consistent with a finding that a claimant can perform sedentary work. *See DeRosia v. Colvin*, No. 16-CV-6093P, 2017 WL 4075622, at *21 (W.D.N.Y. Sept. 14, 2017). In other words, Plaintiff's contention that the ALJ's RFC finding is flawed because she "cannot sit for [the] prolonged periods of time required by sedentary work" is based on a faulty assumption - an inability to sit for prolonged periods of time is not necessarily incompatible with the capacity to perform sedentary work. The consultative opinions in this case are not, on their faces, inconsistent with a finding that Plaintiff is capable of sitting for a total of six hours, broken up into smaller increments.

Moreover, other evidence of record supports the ALJ's conclusion that Plaintiff is capable of performing sedentary work. As the Commissioner points out, Plaintiff was in fact employed full time as a receptionist for three months during the relevant period. *See* T. 72-73. Moreover, Plaintiff testified before the ALJ that she was receiving unemployment benefits. T. 79. As courts in this Circuit have noted, the receipt of unemployment benefits "requires

an ability to work," *Rich v. Comm'r of Soc. Sec.*, No. 08-CV-510S, 2009 WL 2923254, at *1 (W.D.N.Y. Sept. 10, 2009), and there is an inherent inconsistency in seeking both disability benefits and unemployment benefits. *See Jackson v. Astrue*, No. 1:05-CV-01061 (NPM), 2009 WL 3764221, at *8 (N.D.N.Y. Nov. 10, 2009).

The ALJ also noted that Plaintiff had failed to seek any follow-up treatment for her back symptoms since 2005 (T. 59), despite the fact that Dr. Cardiff expressly recommended in 2010 that she see a spinal orthopedic surgeon to see about follow-up treatments to improve her pain (T. 343) and that a consultative examiner in 2012 similarly stated that Plaintiff would benefit from further orthopedic evaluation and treatment to relieve her symptoms and increase her level of function (T. 374). While Plaintiff claimed that she had not sought certain treatment due to lack of health insurance, further questioning by the ALJ revealed that Plaintiff had previously been on her father's insurance and that she had not applied for Medicaid until immediately prior to the hearing. T. 84-86. "[C]ourts have held that failure to seek treatment can undermine allegations of a disabling condition." *Schneider v. Comm'r of Soc. Sec.*, No. 315CV0590GTSWBC, 2016 WL 5019059, at *7 (N.D.N.Y. Aug. 26, 2016); *see also Navan v. Astrue*, 303 F. App'x 18, 20 (2d Cir. 2008) ("the ALJ appropriately relied on the near absence of any medical records between March 1997 and June 1999 to find that [the claimant's] claims of total disability

were undermined by his failure to seek regular treatment for his allegedly disabling condition").

The Court does not dispute that there is some evidence in the record to support more significant limitations than those found by the ALJ. However, as the Second Circuit has made clear, "whether there is substantial evidence supporting the [claimant's] view is not the question . . .; rather, [the Court] must decide whether substantial evidence supports *the ALJ's decision*." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (emphasis in original). In this case, the Court finds that it does, for the reasons set forth above.

## V. Conclusion

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Docket No. 17) is denied and the Commissioner's motion for judgment on the pleadings (Docket No. 25) is granted. Plaintiff's complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

_____

HON. MICHAEL A. TELESCA
United States District Judge

Dated:   February 15, 2018
         Rochester, New York